1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
11

SHELLY PUCHERT,

No.  2:22-CV-2177-DMC

12

Plaintiff,

13

v.

MEMORANDUM OPINION AND ORDER

14

COMMISSIONER OF SOCIAL
SECURITY,

15
16

Defendant.

17
18

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19

review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20

Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the

21

undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22

U.S.C. § 636(c); see also ECF No. 9 (minute order reassigning case to Magistrate Judge).

23

Pending before the Court are the parties' briefs on the merits, ECF Nos. 11, 13, and 14.

24

        The Court reviews the Commissioner's final decision to determine whether it is:

25

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27

more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14  　　　　　For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16  ## I.  THE DISABILITY EVALUATION PROCESS

17  　　　　　To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20
21  Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

22
23  Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
24

25  Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;
26

27

28  / / /

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 19, 2020.  <u>See</u> CAR 16.[1]

Plaintiff claims disability began on June 19, 2020.  <u>See id.</u>  Plaintiff's claim was initially denied.

Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held

on November 30, 2021, before Administrative Law Judge (ALJ) Christopher C. Knowdell.  In a

December 16, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following

relevant findings:

> 1.  The claimant has the following severe impairment(s): chronic obstructive pulmonary disease (COPD); fracture of left wrist; peripheral arterial disease (PAD); hypertension (HTN); and borderline intellectual functioning (BIF).
>
> 2.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 3.  The claimant has the following residual functional capacity: the claimant can perform light work as defined in 20 CFR 416.967(b) except she can occasionally push and/or pull with the nondominant left upper extremity, and she can occasionally handle with the nondominant left upper extremity; she must avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, and similar pulmonary irritants; she is limited to simple, repetitive tasks.
>
> 4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> <u>See id.</u> at 19-31.

After the Appeals Council declined review on October 14, 2022, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on February 6, 2023, ECF No. 10.

1

### III.  DISCUSSION

2          In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 4 by failing to

3   properly evaluate medical opinions offered by consultative doctors Keith Witten, M.D., and Craig

4   West, Psy.D.; (2) The ALJ failed to properly develop the record by obtaining an updated medical

5   opinion evaluating Plaintiff's extremely low intellectual functioning and memory deficits; and (3)

6   the ALJ failed to resolve apparent conflicts between the vocational expert's testimony and the

7   definitions contained within the Dictionary of Occupational Titles (DOT).

8          **A.     <u>Evaluation of Medical Opinions</u>**

9          "The ALJ must consider all medical opinion evidence."  <u>Tommasetti v. Astrue</u>,

10   533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

11   explicitly rejecting a medical opinion.  <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir.

12   2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

13   opinion over another.  <u>See</u> <u>id.</u>

14          Under the regulations, only "licensed physicians and certain qualified specialists"

15   are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); <u>see also</u> <u>Molina v. Astrue</u>,

16   674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

17   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

18   rests on his own independent examination of the claimant."  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

19   1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

20   substantial evidence when the opinions are consistent with independent clinical findings or other

21   evidence in the record.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).  Social

22   workers are not considered an acceptable medical source.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec.</u>

23   <u>Admin.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

24   also are not acceptable medical sources.  <u>See</u> <u>Dale v. Colvin</u>, 823 F.3d 941, 943 (9th Cir. 2016).

25   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

26   workers may be discounted provided the ALJ provides reasons germane to each source for doing

27   so.  <u>See</u> <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017), <u>but see</u> <u>Revels v. Berryhill</u>, 874

28   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

1   when opinions from "other sources" may be considered acceptable medical opinions).

2          The Commissioner has promulgated revised regulations concerning how ALJs

3   must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20

4   C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the

5   treating physician rule which established a hierarchy of weight to be given medical opinions

6   depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal.

7   Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or

8   manifestly contrary to statute, (2) the prior judicial construction was not mandated by the

9   governing statutory language to the exclusion of a differing agency interpretation, and (3) the

10  [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017

11  regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required

12  to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions

13  from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

14  30, 2021).

15         Under the revised regulations, the ALJ must evaluate opinions and prior

16  administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of

17  Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).

18  In determining how persuasive the opinion of a medical source is, an ALJ must consider the

19  following factors:  supportability, consistency, treatment relationship, specialization, and "other

20  factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a

21  requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.

22  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

23         Specifically, in all cases the ALJ must at least "explain how [she] considered the

24  supportability and consistency factors," as they are "the most important factors."  See Buethe,

25  2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:

26  "[t]he more relevant the objective medical evidence and supporting explanations presented by a

27  medical source are to support his or her medical opinion(s) or prior administrative medical

28  finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4

6

1   (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

2   medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

3   medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'"

4   Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate

5   findings on the remaining factors (relationship with claimant, specialization, and 'other') only

6   when 'two or more medical opinions or prior administrative medical findings about the same

7   issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

8   record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

9          At Step 4 in the sequential evaluation process, the ALJ considered the medical

10  opinions of seven medical sources: (1) psychological consultative examiner Keith Witten, M.D.;

11  (2) psychological consultative examiner Craig West, Psy.D.; (3) physical consultative examiner

12  Yolando Julian, D.O.; (4) state agency consultant C. Eskander, M.D.; (5) state agency consultant

13  Irmgard Freidburg, Ph.D.; (6) state agency consultant H. Samplay, M.D.; and (7) state agency

14  consultant N. Lazorwitz, Psy.D..  See CAR 26-29.  Plaintiff argues that the ALJ erred in

15  evaluating opinions offered by Drs. Witten and West.  See ECF No. 11, pgs. 6-12.

16          1.    Dr. Witten

17          The ALJ provided the following discussion of opinions offered by Dr. Witten:

18          On December 2, 2015, psychological consultative examiner Keith Witten,
           M.D., opined that the claimant could not manage her own funds. He
19          determined that the claimant had moderate impairment in her ability to
           perform detailed and complex tasks, accept and understand instructions
20          from supervisors, interact with coworkers and the public, perform work
           activities on a consistent basis without special supervision, complete a
21          normal workweek without interruption from her psychiatric symptoms and
           deal with the usual stresses encountered in the competitive work
22          environment. He indicated that the claimant had mild impairment in her
           ability to perform simple and repetitive tasks and maintain regular
23          attendance in the workplace (Exhibit 1F). This opinion is not persuasive. It
           is supported to some extent by Dr. Witten's findings of tense and self-
24          conscious presentation, moderately impaired recent and remote memory,
           inability to perform a serial seven exercise or some calculations, fair
25          concentration, somewhat concrete thinking, mildly to moderately impaired
           judgment and insight and estimated borderline low intelligence.
26

27  / / /

28  / / /

7

However, this opinion is too remote from the current period at issue to have any probative value, and it is not consistent with current unremarkable mental status examination findings of record (Exhibits 8F at 4, 36; 10F at 4; 11F at 8).

CAR 26-27.

Plaintiff argues that "the ALJ failed to provide a well-supported explanation for discounting the examining medical source opinion" of Dr. Witten, who opined that the "claimant's ability to complete a normal workweek without interruption from her psychiatric symptoms was moderately impaired." See ECF No. 11, pg. 9; see CAR 383. Plaintiff cites Woods v. Kijakazi which holds that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence," and alleges that the ALJ did not meet this standard See id. at 7-8; see Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff acknowledges that "the ALJ cited to normal mental status examinations conducted by social workers and a nurse practitioner" which did not indicate any "significant deficits in Plaintiff's cognitive functioning." See id. at 10. However, Plaintiff contends that this does not satisfy the substantial evidence standard that is needed to discount Dr. Witten's opinion because these evaluations were "primarily for the purpose of evaluating Plaintiff's peripheral vascular disease, not an in-depth mental evaluation" and thus insufficient to contradict Dr. Witten's opinion. See id.

Plaintiff further argues that the holding of Carmickle v. Comm'r of Soc. Sec, does not apply here because the facts are distinguishable. See id. at 9. In Carmickle, the court held that "medical opinions that predate the alleged onset of disability are of limited relevance. . ., especially [] in cases such as this where disability is allegedly caused by a discrete event." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008). Plaintiff distinguishes her case and argues that in Carmickle the alleged injury was an acute on-the-job injury, but here Plaintiff's "borderline intellectual functioning was a lifelong condition" and "the record does not show any significant change in Plaintiff's intelligence and memory since the consultative mental health evaluations in 2015 and 2016." See ECF No. 11, pg. 9. Thus, Plaintiff

1    claims that Dr. Witten's opinions (from December 2015) should not be discounted merely

2    because they predate the amended alleged onset date of her disability (June 19, 2020).

3         Defendant states that Dr. Witten (and Dr. West) ". . . diagnosed a depressive

4    disorder, and . . . assessed limitations were at least partially attributable to Plaintiff's depressive

5    symptoms at the time." See ECF No. 13, pgs. 9-10.  Defendant argues that it was reasonable to

6    conclude the medical opinions are too remote to have probative value because "there was no

7    reason to believe that Plaintiff's depressive symptoms would remain constant and unchanged over

8    the approximately four-year period between when these doctors evaluated Plaintiff, and the June

9    2020 amended alleged onset date." See id. at 10.

10        Here, the ALJ discounted Dr. Witten's opinions for two reasons: (1) they are too

11   remote in time and predated the alleged onset date; and (2) they are inconsistent with more

12   current assessments showing unremarkable findings.  As to the first reason, the Court does not

13   agree with Plaintiff that Dr. Witten's remote-in-time opinion predating the alleged onset date is

14   nonetheless probative because Plaintiff's impairments are long-standing.  While Carmickle

15   involved limitations arising from a discreet event, the Ninth Circuit has applied Carmickle in

16   cases involving, as here, long-standing conditions like borderline intellectual functioning.  See

17   Ahearn v. Saul, 988 F.3d 1111, 1117-18 (9th Cir. 2021).  The Court finds that remoteness of Dr.

18   Witten's opinions, rendered in 2015, five years prior to the alleged onset date, supports the ALJ's

19   decision to give them little weight.

20        As to the second reason, the ALJ cites to Exhibits 8F, 10F, and 11F as more

21   current objective findings which are inconsistent with Dr. Witten's opinions.  Exhibit 8F contains

22   records of Plaintiff's office visits with Ampla Health between October 2019 and August 2020.

23   See CAR 551-674.  These records largely relate to visits in connection with Plaintiff's physical

24   impairments.  Those few records relating to mental issues confirm the ALJ's characterization of

25   Plaintiff's recent unremarkable objective findings.  Specifically, on August 24, 2020, Plaintiff's

26   speech was at a normal rate, volume, articulation, and coherence with no perseveration.  See CAR

27   554 (Exhibit 8F, pg. 4).  Plaintiff's thought process and content were normal.  See id.  Judgment

28   was intact, Plaintiff was oriented to time, place, and person, and no language aphasia was noted.

1  See id.  Plaintiff was able to name months, seasons, and the current president.  See id.

2  Exhibit 10F consists of additional records from Ampla Health from September

3  2020 through December 2020.  See CAR 684-729.  As with Exhibit 8F, the few treatment notes

4  relating to mental issues reflect unremarkable findings.  For example, on December 21, 2020,

5  Plaintiff's mood and affect were described as "alert and cooperative."  Id. at 687 (Exhibit 10F, pg.

6  4).  Exhibit 11F consists of treatment records from Adventist Health covering the period from

7  January 2020 through September 2021.  See CAR 730-46.  In February 2021, observations on

8  psychiatric examination showed that Plaintiff was alert and interactive with normal affect.  See id.

9  at 737 (Exhibit 11F, pg. 8).

10  Other more recent evidence supports the ALJ's analysis.  On November 6, 2020,

11  state agency psychological consultant, Irmgard Freidburg, Ph.D., opined that Plaintiff had no

12  more than mild limitations in mental functioning.  See CAR 62-80 (Exhibit 1A).  Specifically, Dr.

13  Friedburg opined that Plaintiff's ability to remember, understand, apply information, interact with

14  others, concentrate, persist, maintain pace, adapt, and manage herself were all only mildly

15  impaired.  See id. at 72.  The ALJ largely accepted Dr. Friedburg's opinion.  See id. at 28.

16  Additionally, on January 19, 2021, state agency psychological consultant, N.

17  Lazorwitz, Psy.D., agreed that Plaintiff's mental impairments present no more than mild

18  limitations.  See id. at 82-101 (Exhibit 3A).  Dr. Lazorwitz noted in the report that "[u]pdated

19  evidence does not support any significant changes in psuch sxs [symptoms] or impact of such on

20  CLMT's functioning."  Id. at 92.  Again, the ALJ accepted Dr. Lazorwitz's opinions.  See id. at

21  29.

22  Given the ALJ's accurate assessment of Dr. Witten's 2015 opinions as remote and

23  inconsistent with more recent objective findings and opinions, the Court finds no error in the

24  ALJ's evaluation of these opinions.

25  / / /

26  / / /

27  / / /

28  / / /

10

2.   Dr. West

As to Dr. West, the ALJ stated:

> On April 4, 2016, psychological consultative examiner Craig West, Psy.D., opined that the claimant was likely mentally unable to work on a consistent basis requiring an eight-hour workday and on a part time basis. He determined that the claimant would have moderate difficulty performing very simple, concrete or repetitive tasks, and her memory and/or cognitive ability would significantly interfere or prevent her from performing complex or moderately difficult work-related activities. He indicated that the claimant would have moderate difficulty accomplishing persistence and pace over an extended period of time, and she would have moderate impairment in her ability to solve complex problems, make sound judgments and comprehend or respond to difficult directions. He wrote that the claimant's mood instability would significantly contribute to her deterioration in a work setting over time, she would have moderate to marked difficulty interacting with others in a work-related environment, and she would require special or close supervision to assist her in interacting with others. He concluded that the claimant could manage her funds independently, although she may at times not do so in a responsible manner (Exhibit 2F). This opinion is also of no persuasive value. Again, it is somewhat supported by findings of moderate difficulty maintaining concentration, mild to moderately impaired concentration, memory, abstract thinking and judgment, moderately to markedly impaired ability to relate to others, depressed mood and affect, sad appearance and frequent crying. It is also consistent with the claimant's full scale IQ score of 68 on WAIS-IV in the extremely low range, with scores in the low average to extremely low range on composite testing, scores on the Weschler Memory Scale, Fourth Edition (WMS-IV) in the borderline range, indicating memory impairments beyond her intellectual functioning, and scores on the Trail Making Test B significantly below average, suggestive of neurological disorder, and moderately below average on the Trail Making Test A. Again, however, this opinion is too remote from the current period at issue to have any probative value. Moreover, while the claimant's full scale IQ score on the WAIS-IV is suggestive of BIF, it is not consistent with current findings of normal rate of thought, abstract reasoning and computation, intact judgment and insight, full orientation, intact recent and remote memory, attention and concentration and adequate fund of knowledge (Exhibits 7F at 2; 8F at 4, 36, 47, 85; 11F at 6).

See CAR 27.

Plaintiff again argues that the ALJ did not cite "substantial evidence contradicting the existence of Plaintiff's borderline intelligence and mental limitations arising therefrom" in order to discount Dr. West's medical opinion. See ECF No. 11, pg. 11. Plaintiff offers the same arguments offered with respect to Dr. Witten's medical opinion and asserts that the opinion should not be discounted because it was remote in time. See id. at 9-11. In fact, Plaintiff contends that "cognitive limitations based on borderline intellectual functioning and an IQ of 68

were not likely to change," so the older reports should not be discounted.  See id. at 9.  In addition to the previous arguments, Plaintiff contends that "the record does not contain a current in-depth evaluation of Plaintiff's intelligence and memory" and thus no substantial evidence in the record can contradict the findings of Dr. West.  See id. at 11.  Plaintiff also states that the ALJ "could have developed the record by ordering a psychological consultative examination . . . [and] at a minimum, this case should be remanded for further administrative proceedings and development of the medical record."  See id.

Defendant also offers arguments similar to the arguments regarding the medical opinion of Dr. Witten.  Defendant argues that Dr. West's testimony could be discounted because it was too remote in time and cites Ahearn v. Saul.  See ECF No. 13, pg. 11.  Defendant argues that this supports the ALJ decision to give little to no weight to Dr. West's medical opinion.  See ECF No. 13, pg. 11.

As with Dr. Witten, the ALJ cited the same two reasons for rejecting Dr. West's opinions – remoteness and inconsistency with more current objective evidence.  And as with Dr. Witten, the Court finds that remoteness is a valid reason supported by the record.  See Ahearn, 988 F.3d at 1117-18.  Dr. West's opinions were offered in 2016 – four years prior to the alleged onset date in 2020.  The Court also agrees with the ALJ that more recent evidence tends to undermine Dr. West's assessed limitations, specifically the reports from Drs. Freidburg and Lazorwitz discussed above.  The Court finds that the ALJ's analysis as to Dr. West is based on proper legal standards and is supported by substantial evidence in the record as a whole.

**B.**    **Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may

discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after

the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

599, 602 (9th Cir. 1998)).

Plaintiff notes that "the record does not contain current psychological or

psychiatric evaluations" and "other than Drs. Witten and West, no other medical source evaluated

Plaintiff's borderline intellectual functioning or the limitations arising therefrom."  See ECF No.

11, pg. 11.  Plaintiff contends that the state agency mental health consultants and the Ampla

Health providers did not evaluate Plaintiff's borderline intelligence and instead only considered

Plaintiff's depression and PTSD.  See id. at 11-12.  Plaintiff argues that the ALJ erred because "in

the absence of [a recent medical opinion regarding Plaintiff's borderline intelligence] the ALJ did

not have the experience or expertise to independently ascertain the limitations arising from

Plaintiff's borderline intelligence."  See id.

Defendant argues that this claim has been waived.  See ECF No. 13, pg. 12.

According to Defendant:

> Plaintiff was represented by counsel at the administrative hearing, who did not request a consultative examination or raise any challenge regarding the development of the record, and in fact affirmed to the ALJ that the record was "complete" (AR 40-41). As such, Plaintiff should not now be permitted to fault the ALJ for not ordering such an examination. *See Josue R. v. Kijakazi*, 2023 WL 2168693, at *2 (C.D. Cal. Feb. 23, 2023) ("Plaintiff waived this challenge to the development of the medical record by failing to raise it before the ALJ.") (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)); *Hahn v. Berryhill*, 2017 WL 2927151, at *3 (D. Oregon June 30, 2017) (finding development argument not raised to ALJ was waived).

ECF No. 13, pg. 12.

Defendant's argument is well-taken.  Given that Plaintiff was represented by

counsel during the administrative proceedings and never sought a new examination, the argument

that the ALJ failed to develop the record is foreclosed.

/ / /

/ / /

/ / /

Even if the claim is not waived, it lacks merit.  As explained above, the duty to develop the record arises when the ALJ finds the evidence of record to be inadequate or when the evidence is ambiguous.  Neither situation is the case here.  The ALJ never found the evidence to be inadequate.  In fact, the evidence was adequate to allow the ALJ to make an assessment of Plaintiff's mental residual functional capacity.  Further, the evidence was not ambiguous.  In particular, the most recent reports from Drs. Freidburg and Lazorwitz are in accord, both finding no more than mild mental limitations.

### C.      Conflicts Between Vocational Expert Testimony and the Dictionary of Occupational Titles

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

1        In cases where the Grids are not fully applicable, the ALJ may meet his burden

2   under step five of the sequential analysis by propounding to a vocational expert hypothetical

3   questions based on medical assumptions, supported by substantial evidence, that reflect all the

4   plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

5   where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

6   non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

7   Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

8        Hypothetical questions posed to a vocational expert must set out all the

9   substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

10  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

11  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

12  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

13  the ALJ may pose to the expert a range of hypothetical questions based on alternate

14  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

15  determination must be supported by substantial evidence in the record as a whole.  See Embrey

16  v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

17       For Social Security benefits hearings, the DOT is the default presumption for

18  disability classifications. Massachi v. Astrue (9th Cir. 2007) 486 F.3d 1149, 1150.  Moreover, the

19  ALJ has an affirmative responsibility to ask about any possible conflict between vocational expert

20  evidence and information provided in the DOT.  Id.  The ALJ may, however, rebut the

21  presumption of applicability of the DOT when expert testimony exists that is supported by

22  persuasive evidence contradicting the DOT. See Murry v. Apfel, 1999 U.S. App. LEXIS 28911,

23  1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound by the DOT

24  descriptions but can instead rely on the testimony of the vocational expert and own findings

25  specific to the individual plaintiff before the Administrative Law Judge); see also Tackett v.

26  Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (holding that the ALJ can rely on vocational expert's

27  testimony as to (1) the jobs a claimant can work in given the limitations and residual functional

28  capacity and (2) the availability of these jobs on a national scale); see also Moncada v. Chater, 60

15

F.3d 521, 524 (9th Cir. 1995) (concluding that vocational experts have the authority to testify whether a particular plaintiff would be able to perform specific jobs within DOT sub-categories); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Barker v. Secretary of Health and Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (holding that a plaintiff restricted to sedentary work is not automatically barred from performing all "light" jobs when plaintiff was still capable of performing a subcategory of "light" jobs); see also Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990).

At Step 5, the ALJ obtained vocational expert testimony and concluded that Plaintiff can perform other jobs which exist in significant numbers in the national economy. See CAR 30-31. In so doing, the ALJ stated as follows:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> - Cashier II (DOT# 211.462-010), light, unskilled (SVP 2), 534,000 jobs available in the national economy;
> - Order Caller (DOT# 209.667-014), light, unskilled (SVP 2), 12,000 jobs available in the national economy;
> - Collator Operator (DOT# 208.685-010), light, unskilled (SVP 2), 40,000 jobs available in the national economy.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. At the hearing, the vocational expert testified that while her testimony is consistent with the Dictionary of Occupational Titles, her testimony also included information that is not covered by this publication. Specifically, the limitation on the use of the nondominant versus dominant upper extremity are not addressed. She testified that her response with regard to these limitations was based on her more than 30 years of experience (Hearing Testimony). No objections or arguments were made at or after the hearing by the claimant's attorney representative about the testimony given by the vocational expert. Therefore, I accept her testimony and the additional information given based on her years of experience and her knowledge of the labor market.

/ / /

16

1
2
3
4
5

> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 30-31.

6
7
8
9
10
11
12
13
14

Plaintiff alleges "there were apparent inconsistencies between the vocational expert's testimony and the DOT, which the ALJ failed to resolve before relying on the vocational expert's testimony at step of the sequential evaluation." See ECF No. 11, pg. 14.  Specifically, regarding the cashier position, Plaintiff contends that "the vocational expert testified that a person with a limitation to performing simple and routine tasks could perform the occupation of a cashier" but the DOT requires a Reasoning Level of 3 for that occupation.  See id. at 14-15. Plaintiff then asserts that the ALJ erred by not "[soliciting] an explanation for the conflict before relying on the vocational expert's testimony at step five of the sequential evaluation process." See id. at 15.

15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff also contends that "contrary to the vocational expert's testimony, an individual that was limited to occasional handling with the left upper extremity could not perform occupations that the DOT describes as involving frequent handling," and thus the Plaintiff's limited left hand should prevent them from qualifying for the occupations of order caller and collator operator See id. at 16.  Plaintiff cites Lamear v. Berryhill and argues that "common experience does not suggest that the occupations of order caller and collator operator would require more than occasional handling with the left upper extremity" and thus the ALJ committed a material error by relying on the vocational expert's testimony before resolving this conflict.  See id.  Plaintiff states that the vocational expert's general assertion that "the DOT did not address whether an activity is performed with the left versus the right hand" was insufficient to resolve the issue, and it was material error for the expert to offer "no explanation for how the job duties of the referenced occupations could be performed on a frequent basis with a single hand."  See ECF No. 11, pg. 15.

28
/ / /

1   Defendant does not contest Plaintiff's position regarding the cashier occupation.

2   <u>See</u> ECF No. 13, pg. 15.  Therefore, any error with respect to a conflict between the DOT and the

3   vocational expert's testimony that Plaintiff could perform the job of cashier is harmless so long as

4   the ALJ's analysis is correct as to other identified occupations.  <u>See</u> <u>Shaibi v. Berryhill</u>, 883 F.3d

5   1102, 1110 n.7 (9th Cir. 2017).

6   Defendant contends that, as to the other positions identified by the vocational

7   expert – order caller and collator operator – there is no apparent conflict.  Any conflict between

8   the DOT and the vocational expert's testimony "must be 'obvious or apparent' to trigger the

9   ALJ's obligation to inquire further."  <u>See</u> <u>Lamear</u>, 865 F.3d at 1205.  In <u>Lamear</u>, the court held

10  that it was apparent that an occupation requiring the opening or stuffing of envelopes and

11  counting change would require the use of both hands, and that the VE needed to specifically

12  reconcile these jobs with the plaintiff's left-hand limitations.  <u>See</u> <u>id.</u> at 1205-1206.  Here,

13  however, the job descriptions entail simpler tasks such as "pushing and/or pulling of arm or leg

14  controls" and "prepar[ing] bills for items [or] [i]ndicat[ing] on order sheets items located and

15  items that are not available."  <u>See</u> DICOT 208.685-010 Collator Operator; <u>see also</u> DICOT

16  209.667-014 Order Caller.  Unlike <u>Lamear</u>, these descriptions do not present an obvious or

17  apparent conflict with the VE's testimony that they can be performed with one hand.

18  Further, to the extent there is a conflict, the ALJ adequately addressed it by relying

19  on vocational testimony based on the expert's own experience and education.  <u>See</u> <u>Murry</u>,1999

20  U.S. App. LEXIS 28911, 1, 9.  The ALJ specifically noted the following of the VE testimony:

21  At the hearing, the vocational expert testified that while her testimony is
    consistent with the Dictionary of Occupational Titles, her testimony
22  included information that is not covered by the [DOT].  Specifically, the
    limitation on the use of the nondominant versus dominant upper extremity
23  are not addressed.  She testified that her response with regard to these
    limitations were based on her more than 30 years of experience.
24
    CAR 31.
25

26  The Court finds that this sufficiently resolved any conflict.

27  / / /

28  / / /

18

1

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED as follows:

      1.    Plaintiff's motion for summary judgment, ECF No. 11, is DENIED.

      2.    Defendant's motion for summary judgment, ECF No. 13, is GRANTED.

      3.    The Commissioner's final decision is AFFIRMED.

      4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 7, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE